Carlos COUCH, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2007–SC–000372–DG.

Supreme Court of Kentucky.

June 19, 2008.

Samuel N. Potter, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, James C. Shackelford, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

Appellant, Carlos Couch, appeals from a Court of Appeals decision upholding his conviction in Perry County Circuit Court of failing to register as a sex offender, wherein he was sentenced to five years imprisonment, with one year to serve and four years probated. We granted discretionary review of this matter.

Appellant raises three issues for consideration on appeal: 1) whether the trial court improperly admitted evidence that was confidential under RCr 4.08; 2) whether the trial court's conduct was improper when, at a bench trial, it called and questioned a witness after the close of evidence; and 3) whether the evidence presented was sufficient to support a finding of guilt.

## I. BACKGROUND

Appellant was initially convicted of a felony sexual offense committed in Ohio, whereupon he had improper contact with an eight-year-old child. Pursuant to Ohio law, Appellant was required to register as a sex offender and to update this registration annually. Appellant had maintained his compliancy with Ohio law, and at the time of the alleged violation in Kentucky, was still compliant with his annual Ohio registration.

Pertinent to the present matter, however, is that under both Ohio and Kentucky law, registered sex offenders are required to keep such registration current, and if a registered sex offender moves or changes his residence, he is required under Kentucky law to notify the local probation and parole office within five days of relocation. KRS 17.510(6). In early September 2005, someone recorded a complaint with the Kentucky State Police that a suspected sex offender was residing in the Yerkes area of Perry County. The informant gave police Appellant's name. Officer Joey King

was sent to investigate, and on September 11, 2005, made contact with Appellant at his parent's home. Officer King then contacted Ohio Parole Officer, David Fugate, concerning Appellant's registration status, whereupon he discovered that Appellant was not registered in the state of Kentucky.

Officer King subsequently obtained an arrest warrant and on September 16, 2005, returned to Appellant's parents' property where he discovered Appellant located in a small cabin behind the house, which had a "lived in" appearance. Upon serving the arrest warrant, Appellant remarked to Officer King that he was trying to get papers to register in Kentucky.

Appellant was subsequently charged and convicted of failing to register as a sex offender, under KRS 17.510(11). We now review the Court of Appeals' decision affirming Appellant's conviction.

## II. ANALYSIS

### A. Testimony from Pretrial Services admitted in violation of RCr 4.08 was not palpable error.

■ Appellant argues that certain testimony introduced when the trial court called Ms. Diltner,[1] of Perry County Pretrial Services, was inadmissible under RCr. 4.08 and, thus, violated his constitutional privilege against self-incrimination. We agree that the testimony should not have been introduced, but find that such error does not rise to the level of palpable error.

At Appellant's bench trial, after the conclusion of the evidence and closing arguments, the trial court re-opened the evidence and called Diltner as a witness. As an intake officer with pretrial services, Diltner testified that she interviewed individuals after they were arrested for purposes of assigning a bond. She further testified that she had interviewed Appellant after his arrest and that he had provided a Yerkes, Kentucky address. Moreover, she indicated that he described the physical appearance of the house, and denoted that he had been in the area for about six months.

KRS 17.510 sets forth the registration system for individuals who have committed sex crimes or crimes against minors, their duties of registration, and the concomitant penalty for failure to register. Appellant was charged with failing to comply with sex offender registration pursuant to KRS 17.510(11), which states that "[a]ny person required to register under this section who knowingly violates any of the provisions of this section ... is guilty of a Class D felony."

After considering the evidence, the court concluded that Appellant had failed to register as a sex offender in Kentucky. Appellant subsequently filed a motion for acquittal wherein he argued that the trial court violated his rights by introducing testimony which was confidential under RCr 4.08. The trial court thereafter set two additional hearings to discuss the matter and allowed both parties to file written memoranda. The court ultimately denied Appellant's motion for acquittal and indicated that it found him guilty beyond a reasonable doubt even without considering the complained-of testimony.

Diltner's testimony at trial was problematic. Pursuant to RCr 4.08, information provided to pretrial services representatives is confidential and cannot be used at trial without the written consent of the defendant, except in certain enumerated exceptions, none of which are applicable here. RCr 4.08 states in pertinent part:

1. *See infra* Part II.B.

Information supplied by a defendant to a representative of the pre-trial services agency during the defendant's initial interview or subsequent contacts, or information obtained by the pre-trial services agency as a result of the interview or subsequent contacts, *shall be deemed confidential* and *shall not be subject to* subpoena or to *disclosure without the written consent of the defendant*

RCr 4.08 (emphasis added). Clearly, RCr 4.08 was violated here, as a pretrial services intake agent testified concerning confidential information supplied to her without Appellant's written consent, and none of the exceptions apply. How a violation of RCr 4.08 should be treated, however, is a matter of first impression in Kentucky.

■ It should be noted, initially, that Appellant's argument on this matter is unpreserved. Non-contemporaneous objections are insufficient for preservation under RCr 9.22. *See Norton v. Commonwealth*, 37 S.W.3d 750, 752 (Ky.2001); *Patrick v. Commonwealth*, 436 S.W.2d 69, 74 (Ky.1968); *McDonald v. Commonwealth*, 554 S.W.2d 84, 86–87 (Ky.1977). After the court returned from recess and re-opened the evidence, it called Diltner to the stand. Both parties were permitted to cross-examine. No objections were made at the time, and Appellant objected only after the trial judge had made a finding of guilt. Thus, while Appellant included the argument in his motion for acquittal, there was no contemporaneous objection to the introduction of the complained-of testimony at the time of trial.

■ As such, we must review for palpable error. RCr 10.26. Upon palpable error review, the complained-of error must be so "fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky.2006); *see also Graves v. Commonwealth*, 17 S.W.3d 858, 864 (Ky.2000). Ac-

cordingly, we must determine whether there was a substantial possibility that Appellant would have received a different result at trial absent the introduction of the complained-of testimony. *See Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky.2006).

■ Appellant also argues that the nonconsensual disclosure of confidential information violated his Fifth Amendment right against self-incrimination because the complained-of testimony operated as a de facto confession, negating his defense at trial, which was that he was merely visiting his mother and did not live in Kentucky. *See* U.S. Const. Amd. V.; Ky. Const. § 11. Appellant claims that because he was convicted of failing to register his address, his address was the ultimate issue in question. Consequently, he claims that disclosure of this fact without his permission served to deny his right against self-incrimination.

While Appellant would liken the disclosure of information to a pretrial intake officer to a custodial interrogation with *Miranda* implications, we are indisposed to draw such comparisons here today. *See Miranda v. Arizona*, 384 U.S. 436, 442, 86 S.Ct. 1602, 1611, 16 L.Ed.2d 694 (1966). Appellant gave his Kentucky address to Diltner voluntarily. Thus, we are of the opinion that the instance here was more akin to constitutional coincidence rather than constitutional implication. The disclosure of RCr 4.08 information was incriminating only by virtue of Appellant giving one address to pretrial services and then claiming another at trial. The information gathered during this normal part of the arrest procedure was not the product of custodial interrogation.

Nevertheless, the necessary constitutional procedural safeguards were firmly in place to protect Appellant's rights. Pursuant to RCr 4.08, "[a]t the beginning

of the initial interview with a representative of the pre-trial services agency, the defendant shall be advised of the above uses of information supplied by the defendant or obtained as a result of information supplied by the defendant." After being advised by Diltner that he did not have to answer questions, Appellant voluntarily signed a form indicating that he would talk to pretrial services and openly spoke with them. Moreover, because the intake procedures in question occurred post-arrest, Appellant had the added benefit of ostensibly receiving his *Miranda* warnings upon arrest and of being apprised of the circumstances wherein information supplied to the intake officer could be used. As such, we find that the proper safeguards were in place and Appellant was not compelled to be a witness against himself.

However, we find that the introduction of Diltner's testimony without Appellant's consent was error under RCr 4.08. Yet, there was other substantial evidence presented at trial that Appellant was living in Kentucky at the time of the arrest. Thus, we believe that the error in this circumstance did not rise to the level of palpable error and was harmless beyond a reasonable doubt. *See Barth v. Commonwealth,* 80 S.W.3d 390, 396 (Ky.2001) (*citing Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)).

Officer King observed Appellant at his parents' property on September 11, 2005, and again on September 16, 2005. On the latter occasion, Officer King found Appellant in a cabin, which had a lived-in appearance. Appellant was noncompliant for failure to register after five working days. KRS 17.510(6).

Perhaps most damning, however, was Appellant's indication upon arrest that he was trying to get papers to register in Kentucky. This implies that Appellant was cognizant of his obligation to register

and had such reason to do so. Thus, it would have been reasonable to adduce that Appellant had been in Kentucky continuously at least between these dates. Moreover, all of this testimony was presented prior to Diltner's testimony.

Nor do we believe that even if Diltner's testimony had been excluded, the result would have been any different. In fact, the trial judge explicitly addressed this very point, indicating that he found Appellant guilty based solely upon the other evidence and without the testimony supplied by Diltner. Significantly, any prejudicial impact of the erroneous admission was vastly lessened by the fact that there was no jury present to hear the complained-of testimony. The trial judge was fully capable, in his position as trier of fact, to disregard Diltner's testimony when making his ruling.

Consequently, in light of the other testimony presented at trial, we are of the opinion that there was sufficient evidence to support a finding of guilt absent Diltner's testimony. *See White v. Commonwealth,* 5 S.W.3d 140, 142 (Ky.1999). Therefore, although the admission of confidential information without Appellant's written consent was error under RCr 4.08, we hold such error to be harmless, given the other evidence presented, the trial judge's recognition of the error, and the fact that the case was heard at a bench trial, with no jury present. There was no palpable error.

**B. The trial court properly exercised its authority to call a witness to testify after the close of evidence.**

█ Appellant argues that the trial court abused its discretion and functioned as a prosecutor when it re-opened the evidence and called Diltner to testify after closing arguments. While we agree with Appellant insofar as the substance of Dilt-

ner's testimony should have been excluded, we find that the trial court was properly within its purview to re-open and call such witness pursuant to RCr 9.42 and KRE 614.

After the close of evidence, and closing arguments, the court took a brief recess for deliberation and indicated that it needed to check on a couple of matters. Upon returning from recess, the court called Diltner to testify. During the course of Diltner's testimony, the court questioned her concerning the subject matter discussed *supra*. No objections were raised at the time of trial.

Appellant now asserts, however, that the trial court abandoned its adjudicatory role in calling Diltner to the stand to question her and instead usurped the role of prosecutor. Appellant concedes that this issue is unpreserved. As such, we will review for palpable error. RCr 10.26.

First, it is elemental that the trial court retains authority over the manner in which a trial proceeds, and may alter the order of proceeding if it deems necessary. RCr 9.42. The trial court controls the timing and sequence in the court room. "This Court has afforded great discretion to the trial court in determining when such evidence should be received." *Davis v. Commonwealth*, 795 S.W.2d 942, 947 (Ky.1990) (*citing Pilon v. Commonwealth*, 544 S.W.2d 228, 231 (Ky.1977)). Accordingly, we find that the trial court was well within its ability to reopen the case after closing arguments to permit the presentation of additional evidence. *See Davis*, 795 S.W.2d at 947 (finding no abuse of discretion in permitting party to offer additional testimony after the close of evidence).

█ Further, it is significant to note that in the present instance Appellant requested and received a bench trial. During a bench trial, judicial questioning of witnesses is subject to the court's discre-

tion. *Bowling v. Commonwealth*, 80 S.W.3d 405, 419 (Ky.2002). Moreover, a trial court is vested with the authority to call and question witnesses pursuant to KRE 614. KRE 614(a) states that the court may call witnesses on its own motion, while KRE 614(b) indicates that the court may interrogate those witnesses which it calls. "When the trial court acts as the trier of fact, the extent of examination of witnesses by the presiding judge is left to the trial judge's discretion." *Bowling*, 80 S.W.3d at 419 (*citing United States v. McCarthy*, 196 F.2d 616, 619 (7th Cir. 1952)).

█ In *Transit Authority of River City (TARC) v. Montgomery*, 836 S.W.2d 413, 416 (Ky.1992), we noted that "[a] judge should and does have the right and duty, within reasonable limits, to bring out the facts in the case before him clearly." Likewise, a trial judge "is vested with a large discretion in the conduct of the trial of causes and an appellate court will not interpose to control the exercise of such discretion by a court of original jurisdiction, unless there has been an abuse or a most unwise exercise thereof." *Id.* We find no such abuse of discretion here.

The trial judge in the present instance presided over a bench trial of Appellant's request. Therefore, he was bound to elicit such relevant information as he deemed fit. Presumably, the trial judge noticed that Appellant had given a Kentucky address on his bail form, and decided to call Diltner to question her concerning this. The court was acting out of its obligation to elicit the necessary information to properly hear the case. That the information the court sought to ascertain was ultimately confidential does not denigrate the proper intent behind calling the witness, nor does it somehow lessen the court's authority to do so under KRE 614.

Appellant's position principally relies on the language this Court espoused in *Le-Grande v. Commonwealth*, 494 S.W.2d 726, 731 (Ky.1973), where we noted that a trial judge cannot conduct himself in such a manner as to place him "in the role of the prosecutor rather than an arbiter." Indeed, our case law has tended to lend a wary eye and a cautious approach to judicial involvement in the interrogation of witnesses. *See Terry v. Commonwealth*, 153 S.W.3d 794, 802 (Ky.2005). However, such caution has traditionally hinged on our abundant sensitivity to what effect, if any, such involvement may or may not have upon a jury when the influence of the bench is allowed to "leak into the crucible," and our ardent devotion to an impartial and objective judiciary. *Davidson v. Commonwealth*, 394 S.W.2d 911, 912 (Ky.1965); *see* KRE 614(b), Drafters' Commentary (1989) ("[b]ecause of the risk that judicial participation in the production of evidence might unduly influence the triers of fact, it is expected that courts will use this power sparingly."); *see also Caudill v. Commonwealth*, 293 Ky. 674, 170 S.W.2d 9, 10 (1943) (holding that a trial judge should not indicate to the jury through his questioning his opinion of the witnesses' veracity). Thus, necessarily, when such risk of prejudice to the *jury* is missing, the risk of judicial involvement in interrogation is likewise substantially lessened. There-

fore, in instances, such as the one at present, wherein a bench trial is conducted and no jury is present, a trial court should enjoy considerable discretion in its authority to call and interrogate witnesses under KRE 614.

Accordingly, as previously indicated, because Appellant received a bench trial and the trial judge expressly informed the parties at the judgment of acquittal hearing that he had discounted the impact of the improper testimony and based his finding of guilt on other evidence, we find that trial judge did not commit palpable error in exercising his authority under KRE 614. Any error resulting from interrogation concerning the confidential information discussed in Part II.A, *supra* was *de minimis*.

**C.** **There was sufficient evidence presented at trial to support Appellant's conviction for failing to register as a sex offender in Kentucky.**

■ Appellant argues that the Commonwealth never specified which subsection of KRS 17.510 applied in his conviction for failure to comply with sex offender registration under KRS 17.510(11). Additionally, he argues that there was insufficient evidence to support a charge under either KRS 17.510(6),[2] or KRS 17.510(7),[3]

2. KRS 17.510(6) provides, "Any person who has been convicted in a court of any state or territory, a court of the United States, or a similar conviction from a court of competent jurisdiction in any other country, or a court martial of the United States Armed Forces of a sex crime or criminal offense against a victim who is a minor and who has been notified of the duty to register by that state, territory, or court, or who has been committed as a sexually violent predator under the laws of another state, laws of a territory, or federal laws, or has a similar conviction from a court of competent jurisdiction in any other country, shall comply with the registration requirement of this section, including the re-

quirements of subsection (4) of this section, and shall register with the appropriate local probation and parole office in the county of residence within five (5) working days of relocation. No additional notice of the duty to register shall be required of any official charged with a duty of enforcing the laws of this Commonwealth."

3. KRS 17.510(7) provides, "If a person is required to register under federal law or the laws of another state or territory, or if the person has been convicted of an offense under the laws of another state or territory that would require registration if committed in this Commonwealth, that person upon chang-

which deal with individuals convicted outside of Kentucky who relocate to this state. Evidence was presented that Appellant resided in Kentucky and had not registered in violation of the statute. KRS 17.510(11) pertains to those who fail to comply with registration as a sex offender under these sections. Therefore, KRS 17.510(11) is clearly applicable to Appellant.

Appellant was charged and convicted of failing to register as a sex offender. Appellant knew that he was on trial for failing to register in this state and presented a defense to the contrary.

The statute is unambiguous and the resulting penalty for violation of any of the subsections of KRS 17.510 pertinent to registration is the same. KRS 17.510(11) sets forth that penalty, namely, a Class D felony conviction. Appellant contends that there was insufficient evidence to support conviction under these subsections.

As this issue has been sufficiently addressed, we will not reexamine the matter further here. There was substantial evidence introduced at trial to support Appellant's conviction under KRS 17.510(11). *Commonwealth v. Jones,* 880 S.W.2d 544, 545 (Ky.1994). Additionally, there was substantial evidence presented upon which to base a finding that Appellant resided in Kentucky. Moreover, the trial court was proper in denying Appellant's request for

a directed verdict, as a finding of guilt was not clearly unreasonable. *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991). Therefore, Appellant's argument that insufficient evidence was presented to support the trial court's findings has no merit.

### III. CONCLUSION

For the foregoing reasons, we hereby affirm the Court of Appeals' decision upholding Appellant's conviction.

All sitting. LAMBERT, C.J.; ABRAMSON, MINTON, and NOBLE, JJ., concur.

CUNNINGHAM, J., dissents by separate opinion, with SCHRODER, J., joining that dissent.

Dissenting Opinion by Justice CUNNINGHAM.

In spite of the well-written opinion of the Court by my distinguished brother, Justice Scott, I respectfully dissent.

First of all, the majority concedes that the trial court committed error when it allowed the testimony of Ms. Diltner of Perry County Pretrial Services. Such testimony is inadmissible under RCr 4.08 which states:

> Information supplied by a defendant to a representative of the pre-trial services

---

ing residence from the other state or territory of the United States to the Commonwealth or upon entering the Commonwealth for employment, to carry on a vocation, or as a student shall comply with the registration requirement of this section, including the requirements of subsection (4) of this section, and shall register within five (5) working days with the appropriate local probation and parole office in the county of residence, employment, vocation, or schooling. A person required to register under federal law or the laws of another state or territory shall be presumed to know of the duty to register in the Commonwealth. As used in this subsec-

tion, 'employment' or 'carry on a vocation' includes employment that is full-time or part-time for a period exceeding fourteen (14) days or for an aggregate period of time exceeding thirty (30) days during any calendar year, whether financially compensated, volunteered, or for the purpose of government or educational benefit. As used in this subsection, 'student' means a person who is enrolled on a full-time or part-time basis, in any public or private educational institution, including any secondary school, trade or professional institution, or institution of higher education."

agency during the defendant's initial interview or subsequent contacts, or information obtained by the pre-trial services agency as a result of the interview or subsequent contacts, shall be deemed confidential and shall not be subject to subpoena or to disclosure without the written consent of the defendant ...

Said the majority in this case, "Clearly, RCr 4.08 was violated here, as a pretrial services intake agent testified concerning confidential information supplied to her without Appellant's written consent, and none of the exceptions apply." *See* op. at 10.

Since this error was unpreserved, the majority went on to review this mistake under a palpable error standard. "Accordingly," to quote from Justice Scott, "we must determine whether there was a substantial possibility that Appellant would have received a different result at trial absent the introduction of the complained of testimony." *See* op. at 10.

The majority goes on to find that it was not palpable error. This seems to be incongruous.

The witness, Ms. Diltner, was called by the court after both sides had closed their proof and had made closing arguments. In other words, such proof was deemed so critical by the trier of fact that this witness was deemed necessary before a verdict could be rendered. Therefore, it is difficult for me to understand how the majority can conclude that Appellant would not have "received a different result at trial absent the introduction of the complained of testimony." The case was over, both sides had made closing arguments, and the court had taken it under consideration. It was then that the trial court found the Commonwealth's case lacking and called the witness on its own. Only after the defense objected to this unusual turn of events did the court proclaim that Ms.

Diltner's testimony was not critical. This error cannot be considered harmless or non-palpable by a prophylactic disclaimer.

Secondly, it is clear to me that the trial court stepped outside its independent and neutral role when it called—what can only be called a prosecution witness—after all the evidence had been presented and closing arguments had been made. Our Court has always cautioned trial judges against discarding the mantle of impartiality and easing across the line into a prosecutorial role. *See LeGrande v. Commonwealth*, 494 S.W.2d 726 (Ky.1973).

That line was crossed in this case.

Here, the defendant waived *only* his right to a trial by jury. All the other constitutional protections remained in place, including presumption of innocence and the burden of proof being upon the Commonwealth. KRS 500.070 states a universally accepted principle of our criminal justice system: "The Commonwealth has the burden of proving every element of the case beyond a reasonable doubt[.]"

Inexplicably, in this case, my distinguished brothers and sisters, with whom I am most honored to serve, ignore this revered precept.

I am furthermore compelled to consider this from the defense lawyer's perspective. When advising his or her client on the pros and cons of waiving a jury trial, it is reasonable to expect that the defense lawyer will also advise his or her client that the judge will remain objective throughout the trial. It is hardly unlikely that counsel would inform his or her client that if the court was not happy with the Commonwealth's case than it would call witnesses of its own. Given that kind of information, a defendant might very well choose to go with a jury trial instead. At least a jury is stuck with the facts presented to them by

**16**

the lawyers and the law as presented to them by the court.

The majority relies upon the trial court's right to call witnesses by citing KRE 614.[1] Surely, this rule only affords the court this privilege during the course of the trial. Here, the trial was over. Arguments had been made and the case had been finally submitted to the judge. To allow such a prerogative for the fact-finder would be akin to sending a jury to the jury room after a case has been submitted for deliberation, and then permitting that jury to request and call additional witnesses.

Lastly, there is a strong policy reason for reversing the judgment below. A jury trial is time-consuming, expensive, and fertile ground for reversible errors. We should not erect a judicial scarecrow that would discourage criminal defendants from waiving a jury trial and placing their trust in a judge alone. By this decision, we do just that. Every defense lawyer is going to be reluctant to recommend a waiver of a jury trial now that it is known that the state's highest court has allowed the judge to step outside its role of independent magistrate and into the role of prosecutor. Most disturbing, the decision of the majority today would encourage trial judges, even in criminal jury cases, to abandon its independent role, especially when it observes inept prosecutions. There is no difference between judges aggressively assisting the prosecutor in a court trial than doing the same thing in a jury trial.

The litigation of the trial below was converted to that of an inquisitorial nature instead of adversarial. In the process, it more closely resembled a panel discussion and decision rather than a criminal trial.

Therefore, I respectfully dissent.

SCHRODER, J., joins.

---

1. This rule may very well be of dubious constitutional validity in criminal cases as being an infringement upon the separation of powers of the prosecutors to prosecute, the defense lawyers to defend, and judges to be fair and impartial. Also, it is clear when reading the entire rule that it is intended for jury trials, and not when the judge is the fact-finder. See KRE 614(3).